O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE JONES,

                              Plaintiff,

        v.

BILLIONAIRE BURGERS, INC., et al,

                              Defendants.

Case No.:  2:22-cv-00110-MEMF(PVCx)


**ORDER GRANTING DEFENDANT KATHY PHAM'S REQUEST FOR JUDICIAL NOTICE, DENYING DEFENDANT TANG PHAM'S REQUEST FOR JUDICIAL NOTICE, AND DENYING DEFENDANTS KATHY PHAM AND TANG PHAM'S MOTIONS TO DISMISS [ECF NOS. 28, 29, 40]**

        Before the Court is the Motion to Dismiss (ECF No. 28) and Request for Judicial Notice (ECF No. 29) both filed by Defendant Kathy Pham, and the Motion to Dismiss (ECF No. 40) and Request for Judicial Notice[1] filed by Defendant Tang Pham. For the reasons stated herein, the Court GRANTS Defendant Kathy Pham's Request for Judicial Notice, DENIES Defendant Tang Pham's Request for Judicial Notice, and DENIES the Motions to Dismiss.

---

[1] The Request for Judicial Notice filed by Defendant Tang Pham is embedded in the Reply to Tang Pham's Motion to Dismiss. ECF No. 43.

**BACKGROUND**

**I.      Factual Background[2]**

Plaintiff George Jones ("Jones") is an individual residing in California. FAC ¶ 1. Defendant Billionaire Burgers, Inc. ("Billionaire Burgers") is a California corporation located at 811 S. Long Beach Boulevard, Compton, CA 90221 (the "Property"). Defendants Tang Pham and Kathy Pham[3] (collectively, "the Phams") owned the Property at all relevant times. *See id.* ¶¶ 2–4.

In 2012, Jones suffered multiple strokes which resulted in hemiplegia[4] of the left side of his body and caused seizures. *Id.* ¶ 1. In 2015, Jones was diagnosed with epilepsy. *Id.* As a result, Jones has difficulty using his upper and lower body and performing basic functions such as "walking, bending, and pushing or pulling objects" and requires the use of a cane and/or walker daily. *See id.*

In 2021, Jones visited Billionaire Burgers on five separate occasions with the intent to patronize the Property. *Id.* ¶¶ 14, 23–24. On each visit, Jones encountered "physical and intangible" barriers that interfered with his ability to have full access to the establishment and its services, including the absence of an "accessible route of travel" from the parking area to the Property's entrance, "accessible parking" specifically designated for disabled persons, abrupt changes in level, and uneven ground surfaces, among other obstacles. *Id.* ¶¶ 15–21.

**II.      Procedural Background**

On January 6, 2022, Jones filed a complaint against Billionaire Burgers and the Phams asserting: (1) a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et seq.*; and (2) a claim for damages pursuant to California's Unruh Civil Rights Act ("Unruh Act"), CAL. CIV. CODE §§ 51–53. ECF No. 1. On March 17, 2022, Pham filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal

---

[2] Unless otherwise indicated, the following facts are derived from the First Amended Complaint. ECF No. 25 ("FAC").

[3] As clarified during the May 26, 2022 hearing, as of April 7, 2022, Defendant Kathy Pham was the only defendant who had appropriately been served and had responded to the FAC. However, as of July 13, 2022, Defendant Tang Pham has appropriately been served. *See* ECF No. 39.

[4] Hemiplegia is defined by the National Institute of Health as "[l]oss of strength in the arm, leg, and sometimes face on one side of the body. Hemiplegia refers to a severe or complete loss of strength." *Hemiplegia/hemiparesis*, Nat'l Library of Medicine, https://www.ncbi.nlm.nih.gov/medgen/852561 (last visited Jan. 23, 2023).

Rules of Civil Procedure with an accompanying Request for Judicial Notice in support of the Motion. ECF Nos. 21–22. In response, on March 24, 2022, Jones filed a First Amended Complaint in which he alleges the same claims. *See generally* FAC. As a result of the FAC, the previous Motion to Dismiss and Request for Judicial Notice were mooted. ECF No. 27.

On April 7, 2022, Kathy Pham filed a Motion to Dismiss the FAC pursuant to Rule 12(b)(6) with an accompanying Request for Judicial Notice. ECF No. 28 ("Kathy Pham Motion" or "Kathy Pham Mot."); ECF No. 29 ("Request"). On May 5, 2022, Jones filed his Opposition to Kathy Pham's Motion. ECF No. 32 ("Kathy Pham Opposition" or "Kathy Pham Opp'n"). Pham filed her Reply on May 10, 2022. ECF No. 33 ("Kathy Pham Reply"). The Court heard oral argument on May 26, 2022. Minute Order, ECF No. 37 ("May 26 Hearing").

On July 25, 2022, Defendant Tang Pham, having now been properly served, *see* ECF No. 39, filed his own Motion to Dismiss in which he indicates that "the grounds argued" by Kathy Pham in her Motion to Dismiss are "likewise pursued by defendant Tang Pham." Motion to Dismiss, ECF No. 40 ("Tang Pham Motion to Dismiss") at 3. On August 11, 2022, Jones filed his Opposition to this motion to dismiss. ECF No. 42 ("Tang Pham Opposition" or "Tang Pham Opp'n."). The Tang Pham Opposition is largely identical to the Kathy Pham Opposition. There are, however, three additional contentions and arguments:

1. Jones includes additional information in support of his argument that there is a connection between his disability and the violations identified. Specifically, he describes further his need for a flat surface to safely traverse the Property. Tang Pham Opp'n at 15–16;

2. Jones argues that additional signage is necessary to prevent nondisabled individuals from using the designated disabled parking space. *Id.* at 17;

3. In his declaration, Jones declares that he was "driven by [his] friend on each of the five (5) visits" to the Property. Declaration of George Jones, ECF No. 42-1 ¶ 13 ("Jones Decl. 3"). *Cf.* Declaration of George Jones, ECF No. 32-1 ¶ 12 ("Jones Decl. 2") ("I visited [the Property] on five (5) separate occasions.").

In his Reply, Tang Pham states that the Kathy Pham Motion to Dismiss "fully addresses" the additional information regarding the need for a flat surface and the additional argument regarding signage—namely, the first and second items identified above. Reply, ECF No. 43 ("Tang Pham Reply") at 2. However, Tang Pham lodges new arguments in response to the third item—the declaration establishing that Jones's friend drove him to the Property on all five occasions. In response to this declaration, Tang Pham argues that this admission forecloses Jones from having Article III standing under the ADA. Tang Pham Reply at 3. In light of these differences, the Court's discussion as to differences one and two applies to Kathy Pham and Tang Pham's motions to dismiss (collectively, "Motions" or "Mots."). The Court, however, separately discusses Tang Pham's arguments to the third difference. *See infra* Motions to Dismiss Section C.ii.

## **REQUESTS FOR JUDICIAL NOTICE**

### I. **Applicable Law**

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including documents on file in federal court, are appropriate for judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

/ / /

/ / /

4

## II.   **Discussion**

### A. The Phams' Joint Request for Judicial Notice[5]

The Phams request the Court take notice of the following exhibits, each of which was previously filed alongside Jones's Motion for Summary Judgment in *George Jones v. L.A. Central Plaza, LLC*, No. 2:21-cv-04547 (C.D. Cal. Feb. 26, 2022) (Scarsi, J.), ECF No. 36, Exs. 4–8:

1. Exhibit 4: a "heavily redacted medical record bearing a date of March 21, 2019."

2. Exhibit 5: a "heavily redacted medical record of one page extracted from 6 ('Page 4 of 6') bearing an office visit date of November 20, 2019, does not indicate any mobility impairment or use of a cane or walker."

3. Exhibit 6: a "heavily redacted medical record of one page extracted from 3 ('Page 2 of 3') bearing a date of April 30, 2020, [not indicating] any mobility impairment or use of a cane or walker."

4. Exhibit 7: a "heavily redacted medical record of three pages extracted from 4 bearing a date of June 10, 2020[,] that indicates a complaint of pain but does not reveal any observed condition to explain the basis for the complaint and does not indicate any mobility impairment or use of a cane or walker."

5. Exhibit 8: a "heavily redacted medical record of three pages extracted from 4 bearing a date of December 9, 2020[,] that indicates a complaint of pain but does not reveal any observed condition to explain the basis for the complaint and does not indicate any mobility impairment or use of a cane or walker."

Request at 6–7.

Medical records are generally not considered to be adjudicative facts appropriate for judicial notice. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 476–77 (6th Cir. 2008). Here, the exhibits

---

[5] As already stated, Tang Pham has indicated that "the grounds argued" by Kathy Pham are "likewise pursued by defendant Tang Pham." Tang Pham Motion to Dismiss at 3. As the substance of the Kathy Pham Motion to Dismiss is based, in part, on the accompanying Request for Judicial Notice, the Court hereby treats the Request for Judicial Notice as a Joint.

are records submitted as exhibits to a pleading in another court proceeding. This allows the medical records to be treated as public court records.[6] *See Harris*, 682 F.3d at 1132 ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." (citations omitted)). As court records are appropriate for judicial notice, the Court GRANTS the Phams' Request. However, as discussed in more detail below, *see infra* Motion to Dismiss Section II.A, because the Court may not take judicial notice of "*disputed* facts stated in public records," the Court does not consider the facts contained in these records. *Lee*, 250 F.3d at 690 (emphasis added). Indeed, as indicated by the briefing and as expressed during the May 26 Hearing, the parties dispute whether the medical records show that Jones is "actually disabled" within the meaning of the ADA. For the Court to take notice of the facts alleged in the medical records would be antithetical to the purpose of taking judicial notice of "*undisputed* matters of public record." *Id.* (emphasis added).

**B. Tang Pham Request for Judicial Notice**

In support of his Reply to Jones's Opposition to Tang Pham's Motion to Dismiss, Tang Pham requests that the Court take judicial notice of the fact that the Property is adjacent to "a wide sidewalk" and "wide driveway." Tang Pham Reply at 2–3. In support of this fact, Tang Pham submits an undated Google Street View[7] screenshot[8] of the outside of the Property, allegedly showing both the curb in front of the entrance and the adjacent driveway. *Id.* at 2. Internet web pages may be appropriate for judicial notice, *see, e.g.*, *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice

---

[6] *See, e.g.*, *Dillingham v. Garcia*, No. 119CV00461AWIGSAPC, 2019 WL 2577196, at *2 (E.D. Cal. June 24, 2019) ("The court shall not take judicial notice of prison medical records absent a showing that the medical records were matters of public record."); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006), *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010) (discussing medical records) ("Documents that are part of the public record may be judicially noticed to show, for example, *that a judicial proceeding occurred* or *that a document was filed in another court case*, but a court *may not take judicial notice* of findings of facts from another case." (emphasis added)).

[7] *See In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1070–71 (N.D. Cal. 2011), *aff'd sub nom. Joffe v. Google, Inc.*, 729 F.3d 1262 (9th Cir. 2013), *amended and superseded on reh'g*, 746 F.3d 920 (9th Cir. 2013), *and aff'd sub nom. Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013) (defining Google Street View as "a feature embedded within [the] Google Maps program that offers panoramic views of various positions along streets using photos taken from a fleet of specially adapted vehicles commonly known as Google Street View vehicles.").

[8] A screenshot is "an image that shows the contents of a computer display." *Screenshot*, Merriam-Webster, https://cvw.merriam-webster.com/dictionary/screenshot (last visited Jan. 23, 2023).

of factual information found on the world wide web."), and maps and satellite images are considered to be indicia of geography and thus "a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining the general location of [a property]." *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (citing *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 344 (1952) (Jackson, J., dissenting)). However, as already discussed, judicial notice is only appropriate when the Court is taking notice of "undisputed matters of public record," *Lee*, 250 F.3d at 690, from "sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Court does not find that the presented screen shot implicates undisputed facts or is derived from a "source whose accuracy cannot be reasonably questioned." *Id.* Tang Pham offers the screen shot to support the proposition that Jones had no need for an accessible parking space because "[h]e could have been let out [by his friend] anywhere near Billionaire Burger Boyz on the sidewalk." Tang Pham Reply at 2. However, not only do the parties dispute whether Jones being dropped off at the Property presented barriers to entry sufficient to establish standing under the ADA but, as the screenshot is undated, the accuracy of the image—specifically whether the image is an accurate representation of the Property during the relevant period—can be reasonably questioned. As such, judicial notice is inappropriate. Accordingly, the Court DENIES Tang Pham's Request for Judicial Notice.

## MOTIONS TO DISMISS

The Phams argue that there are two grounds upon which Jones's complaint must be dismissed for failure to show Article III standing: first, that Jones's complaint does not properly allege that he is disabled, and second, that Jones's complaint does not properly allege that he suffered a concrete injury in fact—in other words, Jones failed to allege that the violations alleged caused him harm in light of his specific alleged disability or that there is the requisite connection between his disability and the violations alleged.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### I.  Applicable Law

#### A.  The Court applies Federal Rule of Civil Procedure 12(b)(6).

There is some ambiguity in the briefing concerning whether this Court should apply the standard for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), on the one hand, or the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), on the other hand. In their opening briefs, the Phams appear to apply the standard for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), rather than the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See generally* Kathy Pham Mot.; Tang Pham Mot. (both containing a caption page referring to the motions as a "Motion to Dismiss Case for Lack of Jurisdiction Pursuant to Rule 12(b)(6)") (emphasis added)). Moreover, Jones also discusses and applies the Rule 12(b)(1) and 12(b)(6) standards in both Oppositions. *See* Kathy Pham Opp'n at 7–9; Tang Pham Opp'n at 8–10.

Thus, as a threshold matter, the Court must determine which standard to apply. A brief discussion of the two standards and the law governing their application is therefore in order. Federal Rule of Civil Procedure 12(b)(1) generally governs motions to dismiss for lack of jurisdiction. A Rule 12(b)(1) motion "raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." 5B Wright & Miller § 1350. And "[w]here a defendant claims . . . 'that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, . . . we treat the challenge as 'any other [Rule 12(b)(1)] motion to dismiss on the pleadings for lack of jurisdiction.'" *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)). Jurisdictional challenges under Rule 12(b)(1) are either facial or factual. *Safe Air*, 373 F.3d at 1039. A facial attack challenges jurisdiction by arguing the complaint "on its face" lacks jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A "factual" attack requires presenting extrinsic evidence demonstrating the lack of jurisdiction on the facts of the case. *Id.*

However, a "court may not resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Roberts*, 812 F.2d at

1177 (internal quotation marks and citations omitted). Put differently, a "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that *the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action*." *Safe Air*, 373 F.3d at 1039 (emphasis added). When this occurs, the court is to apply the Rule 12(b)(6) standard instead, *see Roberts*, 812 F.3d at 1177 ("Dismissal is then appropriate where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citations omitted)), and leave intertwined jurisdictional and substantive issues to be resolved at trial or on summary judgment. *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

There are three reasons why it is appropriate to apply the Rule 12(b)(6) standard in this case. First, it is clear that Title III of the ADA involves intertwined questions of jurisdictional and substantive issues going to the merits, and the Rule 12(b)(6) standard applies to such intertwined questions. *See* 42 U.S.C. § 12182(a). Said questions are intertwined under the ADA because a successful claim under the ADA requires that the plaintiff allege an injury in fact within the meaning of the ADA and must also be able to, on the merits, show that she is disabled under the meaning of the statute—the two matters at issue in the Phams' motion. *See id.*[9] Second, the extrinsic facts upon which the Phams seek to rely with respect to their first argument for dismissal—whether Jones is disabled under the statute—are in dispute. *See infra* Motions to Dismiss Section II.A. Finally, the Phams have clarified in their reply briefs—and Kathy Pham further clarified at the May 26 hearing—that they are proceeding under Rule 12(b)(6), not Rule 12(b)(1). Kathy Pham Reply at 3; *see also* Tang Pham Reply at 1. Therefore, the Court applies Rule 12(b)(6) and reserves all inquiry into the intertwined jurisdictional and substantive issues for trial or summary judgment. *See Roberts*, 812 F.3d at 1177; *Rosales*, 824 F.2d at 803.

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose

---

[9] *See also Acevedo v. C & S Plaza Ltd. Liab. Co.*, Case No. 20-56318, 2021 WL 4938124, at *1 (9th Cir. Oct. 22, 2021) (arriving at a similar conclusion).

of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

**B. Rule 12(b)(6) Standard**

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A court should grant a motion to dismiss when, "accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party," a complaint fails to state a claim upon which relief can be granted. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *see* FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) only requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. "[D]etailed factual allegations" are not required. *Id.*

## II.   **Discussion**

### A. The Court may not consider the extra-pleading materials to the extent that any facts alleged therein relate to nature or severity of Jones's disability.[10]

The Court must first analyze the admissibility of the extra-pleading materials submitted by Jones in support of his Oppositions. Jones submits two declarations and several exhibits to support both Oppositions. *See* Jones Decl. 2; Declaration of Anoush Hakimi ("Hakimi Decl."); Exs. 1–7, ECF No. 32 ("Opp'n Exs.") (both submitted in support of the Opposition to the Kathy Pham Motion to Dismiss); *see also* Jones Decl. 3; Declaration of Anoush Hakimi, ECF No. 41–2 ("Hakimi Decl. 2") (both submitted in support of the Tang Pham Motion to Dismiss).

While a court may consider extrinsic evidence on a motion to dismiss pursuant to Rule 12(b)(1), it may not do so on a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."). This limitation does not apply, however, when the materials reference "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (holding that these materials "do not convert the motion to dismiss into a motion for summary judgment").

Jones submits the following exhibits in support of his Oppositions:

---

[10] Jones appears to argue that by including a request for judicial notice in her Rule 12(b)(6) Motion, Pham has converted the motion to dismiss into a motion for summary judgment. Opp'n at 10. This is incorrect. As previously stated, a court may take judicial notice of facts on a 12(b)(6) motion without converting the motion into a motion for summary judgment. *See Lee*, 250 F.3d at 688–89 (holding that taking notice of matters of public record is one of two exceptions "to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion").

- Exhibit 1: photographs of Jones's cane and walker;

- Exhibit 2: a photo of Jones's Disabled Person Parking Placard;

- Exhibit 3: a March 21, 2019 "Final Report" medical record "obtained from my physician's office in connection with my visit with Aura Yap Quinsay, NP" which notes that Jones had "seizure three weeks prior to [his March 21, 2019 appointment and that [he] had ongoing issues with dizziness, knee pain and left leg pains";

- Exhibit 4: a November 20, 2019 "Final Report" medical record "obtained from [his] physician's office in connection with [Jones's] visit with Dr. Elizabeth Juppey Parackal . . . redacted to remove irrelevant private information." The exhibit reflects that Jones has "cervical spine abnormalities and recommend[s] a follow up CT scan.";

- Exhibit 5: an April 30, 2020 "Final Report" medical record "obtained from [his] physician's office in connection with my visit with Dr. Susan Shaw. . .  redacted to remove irrelevant private information." The exhibit reflects that Jones "at risk for osteoporosis/osteopenia due to the need for long-term AED treatment in connection with my epilepsy diagnosis";

- Exhibit 6: a June 10, 2020 "Final Report" medical report "obtained from my physician's office in connection with my visit with Aura Yap Quinsay, NP . . . redacted to remove irrelevant private information." The exhibit reflects that "Nurse Practitioner Quinsay could see nerve roots at the C7 location on [Jones's] spine MRI" and recommends that Jones "use a Velcro wrist splint" at night to alleviate his carpal tunnel syndrome or "consult [his] healthcare providers for surgery or injections";

- Exhibit 7: a December 9, 2020 "Final Report" medical report "obtained from my physician's office in connection with my visit with Aura Yap Quinsay . . . redacted to remove irrelevant private information." The exhibit reflects that Jones was "recommended to have physical therapy evaluation/treatment twice a week

1    for twelve weeks for low back pain" and that he experiences "recurrent low back

2    pain associated with leg pains upon standing upright and/or ambulating for one

3    month."

4  Jones Decl. 2 ¶¶ 4–10; Jones Decl. 3 ¶¶ 4–10.

5          These records are identical to those submitted by Pham as exhibits for judicial notice. *See*

6  Kathy Pham Reply at 3 (referring to the exhibits as "the same ones [Jones] utilized in the L.A.

7  Central Plaza case"); *see generally* Request. Although neither party disputes the authenticity of

8  Jones's medical records nor do they dispute the facts of Jones's condition, the parties do dispute

9  whether the records' underlying facts indicate that Jones is disabled within the meaning of the ADA.

10  *See* Kathy Pham Opp'n Exs. 3–7; Tang Pham Opp'n Exs. 3–7. Just as the Court may not consider

11  the disputed facts in the records submitted for judicial notice, *see supra* Requests for Judicial Notice,

12  and as the nature and severity of Jones's disability remain in dispute, the Court similarly does not

13  consider these exhibits to the extent that any facts relate to nature or severity of Jones's disability. As

14  a result, the Court limits its considerations of these exhibits to the same parameters as those

15  determined in its discussion of the Requests for Judicial Notice.

16  **B. Jones has pleaded sufficient facts indicating that he is disabled under the meaning of**
17      **the ADA.**

18          The Phams argue that Jones's ADA claim should be dismissed because he fails to plead

19  sufficient facts to meet the ADA disability standard. Kathy Pham Mot. at 12. Jones, on the other

20  hand, argues that because the ADA jurisdictional analysis is "intertwined with the merits of [his]

21  claim," the Court should deny dismissal. Kathy Pham Opp'n at 11; Tang Pham Opp'n at 11.

22          Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal

23  enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place

24  of public accommodation by any person who owns, leases (or leases to), or operates a place of

25  public accommodation." 42 U.S.C. § 12182(a); *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173,

26  1175–76 (9th Cir. 2021).

27          Underlying the ADA is the Congressional recognition of the fact that "physical or mental

28  disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many

people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination." 42 U.S.C. § 12101(1). The Ninth Circuit has held that the "ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citing 42 U.S.C. § 12182(a)).

Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1)(A). Impairments that "substantially limit" one major life activity do not need to limit other major life activities to qualify as a "substantially limiting impairment." 28 C.F.R. § 36.105(d)(iii). Instead, all that is required is that the individual's disability limits at least one major life activity. *Id.* §§ (d)(ii)–(iii). Major life activities include "walking . . . reaching, lifting, bending." *Id.* § (c)(1)(i). The "threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." *Id.* § (d)(ii).

The Phams argue that Jones's evidence of chronic pain cannot succeed on a motion to dismiss as "chronic pain, standing alone" is insufficient to show proof of disability. *See* Kathy Pham Mot. at 9–10. However, the Court finds that Jones has done more than simply allege chronic pain. In the FAC, Jones alleges that: (1) he "suffered multiple strokes in 2012, which resulted in hemiplegia of the left side of his body" and cause him to suffer from seizures; (2) he has "difficulty using his upper and lower body for basic functions such as walking, bending, and pushing or pulling objects;" and (3) he uses a "cane and/or walker daily." FAC ¶ 1. A disability requires interference with one's "major life activities," which include walking, reaching, lifting, bending. *See* 28 C.F.R. § 36.105(c)(1)(i). The FAC specifically states that Jones's impairments cause him difficulty in

1    "walking, bending," and manipulating objects. Thus, the Court finds that Jones has plead sufficient

2    evidence indicating that he is disabled within the meaning of the ADA.[11]

3            Finally, the Phams also argue that Jones has failed to prove that he truly requires a walker or

4    cane to walk and that he can at best show that he walks with a limp. Kathy Pham Mot. at 11.

5    However, as Jones states, *see* Kathy Pham Opp'n at 10; Tang Pham Opp'n at 10, because this

6    argument involves weighing on disputed facts, this analysis is improper on a Rule 12(b)(6) motion to

7    dismiss and is better reserved for a motion for summary judgment.[12] The Phams' argument requires

8    that the Court look beyond the FAC and weigh on extrinsic, disputed facts. As such, the Court does

9    not consider this argument at this juncture.[13]

10           As a court should not employ "extensive analysis" in determining whether an impairment

11   "substantially limits a major life activity," viewing the facts in the light most favorable to the

12   moving party, the Court finds that Jones has plead sufficient facts indicating that he qualifies as

13   disabled. *See Caltex*, 824 F.3d at 1159 (the court "must accept all well-pleaded material facts as true

14   and draw all reasonable inferences in favor of the plaintiff").

15       **C.  Jones has pleaded sufficient facts indicating that he has a concrete injury in fact as it
16           relates to his route of travel (change in slope and level) and parking space/access aisle
             claims.**

17           The Phams additionally argue that even if Jones has sufficiently proven that he is disabled

18   within the meaning of the ADA, he has nevertheless failed to establish that he has Article III

19

20   _____

21   [11] Further, the case law does not reflect that chronic pain precludes a finding of disability under the ADA;
22   instead, it reveals that an allegation of chronic pain must be accompanied by additional proof of the pain's
     impact on the plaintiff's major life activities. *See, e.g.*, *Hale v. King*, 642 F.3d. 492, 501 (5th Cir. 2011)
23   (finding that a plaintiff with "chronic back pain" was not disabled under ADA because the complaint *only
     alleged* that the plaintiff's pain required many prescriptions and treatments but did not "contain facts
24   regarding the impact of [plaintiff's] ailments on his ability to perform major life activities.").
     [12] Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant
25   shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a
     matter of law."
26   [13] At the May 26 Hearing, Kathy Pham argued that the Court should consider whether the submitted evidence
27   supports the inference that Jones is indeed disabled under the meaning of the ADA. However, the Court finds
     that this determination is improper on a Rule 12(b)(6) motion to dismiss which only requires that the Court
     determine whether the FAC, on its face, states a plausible claim for relief. FED. R. CIV. P. 8(a)(2); *Iqbal*, 552
28   U.S. 678. To do as Kathy Pham has requested, that is, to weigh the sufficiency of the extrinsic evidence, is
     analysis reserved for a motion for summary judgment or trial. *See* FED. R. CIV. P. 56.

standing to sue for the specific violations he alleges under the ADA because he cannot show that the Phams' alleged violations prevented Jones from accessing the property. Kathy Pham Mot. at 12. Jones, on the other hand, contends that as he has met this threshold as he "connected the alleged violations to his disabilities and . . . shown how the conditions at the Property limited his access." Kathy Pham Opp'n at 13; Tang Pham Opp'n at 13.

> i.     Jones has pleaded sufficient facts showing a connection between the Phams' specific ADA violations, his particular disability, and the harm he suffered.

The Phams argue that Jones lacks standing to sue under the ADA because he has not pleaded "facts to show his standing to sue for the alleged violations is plausible." Kathy Pham Mot. at 13. Jones argues that he has "connected" each of the alleged violations to his disabilities and "has shown how the conditions at the Property limited his access given his disabilities." Kathy Pham Opp'n at 13; Tang Pham Opp'n at 13.

As previously stated, to prevail on an ADA Title III claim, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). As discussed herein, the Court finds that Jones has alleged sufficient facts to show that he is disabled under the meaning of the ADA. Further, neither party disputes that the Phams own the Property. The remaining question is whether Jones was denied public accommodations *due to* his disability.

The Phams direct the Court to *Whitaker* and *Chapman* to support her argument that Jones has failed to allege that the alleged violations prevented Jones from accessing the Property. *Whitaker*, 985 F.3d 1173; *Chapman*, 631 F.3d 939. In *Whitaker*, the Ninth Circuit held that, when weighing the sufficiency of allegations supporting violations of the ADA on a Rule 12(b)(6) motion to dismiss, plaintiffs must do more than recite legal conclusions and should provide specific information detailing how the particular violation denies the plaintiff "from full and equal enjoyment of the premises." 985 F.3d at 1177. In *Chapman*, the Ninth Circuit, weighing whether the plaintiff had met the Title III standing requirement on summary judgment, held that the plaintiff did not properly meet

the standing requirement because he "never alleg[ed]" the specifics of the barriers that he encountered at a public establishment and how his disability "was affected by them so as to deny [plaintiff] with the full and equal access that would satisfy the injury-in-fact requirement." 631 F.3d at 954. Because of this deficiency, the Ninth Circuit held that as the plaintiff "lacked standing at the outset of [the] litigation to assert the ADA claims, the district court should have dismissed them." *Id.* at 955. Both cases are distinguishable.

Jones raises nine specific ADA violations: (1) failure to provide an accessible route of travel; (2) failure to post an "off-street authorized" parking sign; (3) failure to post an "accessible parking space" sign; (4) failure to post a "Minimum Fine $250" sign; (5) failure to maintain stable, firm, and slip resistant ground surfaces; (6) presence of faded paint on accessible parking space lines; (7) presence of slopes and cross slopes in designated disabled parking spaces that exceed 2%; (8) failure to provide "NO PARKING" ground surface signage in the loading/unloading access aisle adjacent to designated disabled parking spaces; and (9) failure to provide access aisles adjoining the designated accessible routes. FAC ¶ 21. In support of each claim, Jones alleges that he relies on a cane and walker, requires additional space to maneuver his mobility devices, needs to have access to parking spaces close to the building entrance, and is at a greater risk of tripping and falling due to said devices. *Id.* He also indicates that as a side-effect of his epilepsy medication, he is at a greater risk of serious injury if he were to fall. *Id.* ("If Plaintiff were to fall, he is at risk for severe fractures as his epilepsy medications weaken his bones and cause osteoporosis/osteopenia."). Jones highlights specific facts including the particular percent incline of the slopes and cross slopes and explicitly describes how and why each violation hinders his access to the Property. This is a far cry from *Whitaker*, where the Ninth Circuit found that the plaintiff's complaint failed to answer "basic questions" and provide factual detail regarding his inability to access the relevant location. 985 F.3d at 1177.[14]

_____

[14] *See also Whitaker v. PLH Holdings, LLC*, No. CV 19-09932-CJC(RAOx), 2020 WL 10505239, at *2 (C.D. Cal. May 8, 2020) (finding that the plaintiff on a 12(b)(6) motion to dismiss had sufficiently stated a claim as the FAC "contain[ed] sufficient detail to give Defendants notice of what aspects of their [property] [were] being challenged."). *Cf. Sylve v. MGP IX Props., LLC*, No. EDCV 19-00763-CJC(AGRx), 2019 WL

*Chapman* is also distinguishable. The *Chapman* court weighed the connection between the plaintiff's particular disability and the alleged ADA violations on a motion for summary judgment, which required the court to evaluate whether the factual record showed that the plaintiff's particular disability was impacted by the alleged ADA violations. 631 F.3d at 950–51. Here, as the present case is on a 12(b)(6) motion to dismiss, the Court need only determine whether Jones's complaint alleges sufficient facts indicating that the alleged barriers impacted his full and equal enjoyment of the Property. *See Iqbal*, 556 U.S. at 678. Further, Federal Rule of Civil Procedure 8(a)(2) mandates that Jones need provide no more than "a short and plain statement of the claim showing that [he] is entitled to relief." FED. R. CIV. P. 8(a)(2). The Court finds that Jones has done so here.

      ii.     <u>That Jones made repeated visits to the Property and may have been driven to the Property by a friend does not preclude Article III standing.</u>

In his Reply, Tang Pham argues that Jones's "allegations are purely hypothetical" because if the Property "was so unsafe, a real plaintiff would have filed suit after the first visit," Tang Pham Reply at 5. Tang Pham further insinuates that Jones's repeated visits to the Property indicate that Jones was not deterred from patronizing the restaurant. *Id.* at 4. Tang Pham cites to the recent Supreme Court case, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), to support this proposition. Tang Pham Reply at 3–5. Regarding Article III standing in the context of statutory violations, *TransUnion* dictates that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205. *TransUnion* provides the following hypothetical:

> Suppose . . . that a . . . plaintiff in Hawaii files a federal lawsuit alleging that [a] company in Maine violated [a federal] environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.

*Id.*

/ / /
/ / /

---

9042667, at *2 (C.D. Cal. July 17, 2019) (granting dismissal where the plaintiff had failed to allege "any . . . facts establishing *how* the store denied Plaintiff a public accommodation" as the complaint lacked "any factual allegations as to how the computer workstation or paths of travel denied him full and equal access.").

The Court held that this hypothetical lawsuit

> may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's "compliance with regulatory law" (and, of course, to obtain some money via the statutory damages).

*Id.* at 2206.

However, the Court finds that the instant case does not present the same issues as those identified in *TransUnion*. Here, the FAC indicates that Jones personally visited the Property on multiple occasions and found barriers denying him full access. The allegations, as pleaded, show that Jones is doing more "than merely seeking to ensure a defendant's compliance with regulatory law" but is instead seeking to ensure that he can have full access and equal enjoyment of the premises. *Id.* at 2206. As such, this case presents different issues than those contemplated in *TransUnion*.

Finally, Tang Pham raises two final arguments in his Reply: (1) that Jones's repeated visits indicate that he was not truly barred from entering the Property and thus preclude Jones from having standing; and (2) Jones's admission in his declaration in support of the Opposition to the Tang Pham Motion to Dismiss—that Jones had a friend drop him off at the Property on all five occasions—similarly precludes him from having standing to argue that the absence of a designated parking space and wide driveway similarly precludes him from having standing. Tang Pham Reply at 5. Ninth Circuit authority does not support either argument. As stated in *Chapman*, "an ADA plaintiff can show a likelihood of injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier." 631 F.3d at 950; *id.* ("[A]n ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because *they otherwise interfere* with his access to the facility.") (emphasis added). As already discussed, the Court finds that Jones has pleaded that the specific architectural barriers impeded his access to the Property. Further, whether Jones was dropped off at the Property by a friend or visited independently does not necessarily preclude him from having standing. Indeed, the architectural barriers identified by Jones could very well have deterred him

from attempting to visit the Property on his own and thus created a deterrent as contemplated by the *Chapman* court. *See Chapman*, 631 F.3d at 950. In any event, such an inquiry into the facts presented by either party is best reserved for a motion for summary judgment or trial. *See* FED. R. CIV. P. 56. Accordingly, Tang Pham's arguments are unavailing.

Therefore, the Court finds that Jones has pleaded sufficient facts to support his ADA violation claims. As a result, the Phams' Motions to Dismiss Jones's ADA claim are DENIED.

**D. As the Court declines to extend supplemental jurisdiction over Jones's Unruh Act Claim, the Phams' motions to dismiss the Unruh Act Claim are moot.**

Finally, the Phams also argue that the Court should dismiss Jones's Unruh Act claim as supplemental jurisdiction is improper due to the restrictions imposed by the California Legislature and Ninth Circuit's comity concerns. Kathy Pham Mot. at 16–17. Jones argues that if the Court finds that the ADA claim should not be dismissed, it should retain jurisdiction over the Unruh Act claim in the interest of "economy, convenience, fairness, and comity." Opp'n at 17.

However, the Court previously declined to exercise supplemental jurisdiction over the Unruh Act claim. Order Declining to Exercise Supplemental Jurisdiction Over Plaintiff's Unruh Act Claim, ECF No. 47. Accordingly, the Phams' Motions to Dismiss as to this claim is MOOT.

/ / /
/ / /

## **CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1. The Phams' Motions to Dismiss Jones's ADA claim are DENIED;

2. The Phams' Joint Request for Judicial Notice is GRANTED; and

3. Tang Pham's Request for Judicial Notice is DENIED.

In the event that Jones desires to amend the Complaint as to any of the claims dismissed with leave to do so, he is ORDERED to file a First Amended Complaint within thirty (30) days of this Order.

**IT IS SO ORDERED.**

Dated: January 26, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge